**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| MELISSA ZIRBEL, as next friend and parent of CSZ, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 14 C 9042 |
| v. | ) ) | |
| WILMINGTON SCHOOL DISTRICT 209U; DR. MATT SWICK, in his official and individual capacities; ADAM SPICER, in his official and individual capacities; BRIAN GOFF, in his official and individual capacities; CHRISTY ZILLER, in her official and individual capacities; and VENITA DENNIS, in her official and individual capacities, | ) ) ) ) ) ) ) ) ) | Jury Demanded |
| Defendants. | ) ) ) | |

## COMPLAINT

### INTRODUCTION

1.      Plaintiff Melissa Zirbel, as next friend and parent of her son CSZ, a minor ("Plaintiffs"), by and through their attorney, Al Hofeld, Jr., Esq., and for their Complaint against defendants Wilmington School District 209U, Dr. Matt Swick, Adam Spicer, Brian Goff, and Venita Dennis (collectively, "Defendants"), allege as follows:

2.      CSZ enrolled as a third-grade student at L. J. Stevens Elementary School in the fall of 2013, as a fourth-grade student the next year, and as a fifth-grade student the following year.  Subsequently, CSZ enrolled as a sixth-grade student at Wilmington Middle School in the fall of 2016, as a seventh-grade student in the fall of 2017, and now as an eighth-

grade student in the fall of 2018. His family plans to send him to Wilmington High School next year.

3.     Each year, CSZ has been one of only a very few minority or biracial students in an overwhelmingly Caucasian student body. CSZ is mixed-race African-American and Caucasian. The District's teachers, staff, and administrators are exclusively Caucasian.

4.     In District 209U, there exists a history and a pattern of racial harassment of minority residents and students. In Wilmington, residents, including those in positions of leadership, openly use the "N-word" without even being conscious that it is deeply and personally offensive.

5.     When CSZ was in 3rd grade, Caucasian students began ridiculing, harassing, tormenting, and physically attacking CSZ because of his African-American heritage. They regularly called him racial slurs and made derogatory racial comments directed at him. They have done this repeatedly and persistently over the last five years. They also repeatedly threatened CSZ with violence and, at times, they have engaged in actual violence against CSZ. These incidents took place in school, on school grounds, or sometimes on the way home from school.

6.     Each time there was such an incident, CSZ and his mother notified Defendants that CSZ was being harassed because of and/or about his race and asked them to take actions to address it and prevent it from happening again, but Defendants have consistently and utterly failed to respond and intervene to protect their student CSZ. In many instances, school administrators simply blamed CSZ for the harassment he suffered from other students.

7.     After Melissa Zirbel filed a complaint with the U. S. Department of Education Office of Civil Rights ("OCR") and OCR placed District 209U under a mandatory

plan for complying with Title VI of the Civil Rights Act of 1964, defendants slowly began to take a few baby steps to protect CSZ and other minority students and to teach diversity sensitivity to the student body.

8.      But these cosmetic, ineffectual steps have been far "too little, too late" to arrest or reverse the harm to CSZ.  For CSZ, the damage has been done.  He has suffered serious emotional, psychological and educational harm as the direct result of defendants' failure to protect him from years of racial harassment.

9.      Therefore, CSZ brings this civil rights action against Defendants under title VI of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and Illinois law.  As detailed below, Defendants' deliberate indifference to the racial harassment that CSZ suffered during 3rd – 7th grade deprived him of his right to an education.  During this time, defendants failed to take reasonable measures to protect CSZ from students who harassed him, including but not limited to appropriate discipline for his perpetrators as well as diversity sensitivity training for students, teachers, staff and administrators to address the underlying problem; they ignored or minimized the viciousness and seriousness of the verbal and physical attacks against CSZ; and instead they blamed and scapegoated *CSZ* for other students harassing behavior.  CSZ seeks compensatory and punitive damages for the physical, emotional and academic harm resulting from Defendants' violations of his civil rights.

## PARTIES, JURISDICTION AND VENUE

10.      Melissa Zirbel is the mother of CSZ, a minor.  She brings this action as his parent and next friend.  At all times relevant to this Complaint, she resided in Wilmington, Illinois, located in Will County.

11.     Plaintiff CSZ is a mixed-race male, part African-American and part Caucasian. At all times relevant to this Complaint, CSZ resided with his mother in Wilmington, Illinois, located in Will County, and attended L. J. Stevens Elementary School ("Stevens") and then Wilmington Middle School ("WMS").

12.     Defendant Wilmington School District 209U ("District 209U") is a unit of local government that operates public schools in Will County, Illinois, including WES and WMS. At all times relevant to this Complaint, District 209U received federal financial assistance and instituted programs and activities that received federal assistance.

13.     At times relevant to this complaint, all of the administrators, teachers, and staff of District 209U were Caucasian.

14.     Defendant Dr. Matt Swick was employed as the Superintendent of Schools for District 209U at all times relevant to this Complaint. Dr. Swick is Caucasian. His predecessor in that position was Jay Plese, whom plaintiffs have not named as a defendant. Mr. Plese is Caucasian.

15.     Defendant Adam Spicer was employed as the Principal of WMS at all times relevant to this Complaint. Mr. Spicer is Caucasian.

16.     Defendant Brian Goff was employed as the Assistant Principal of WMS at all times relevant to this Complaint. Mr. Goff is Caucasian.

17.     Defendant Christy Ziller was employed as a 7th grade teacher at WMS at all times relevant to this Complaint. CSZ was a student in her home room class for Language Arts and other core subjects.

18.     Defendant Venita Dennis was employed as the Principal of Stevens at all times relevant to this Complaint. Ms. Dennis is Caucasian.

19.     This Court has jurisdiction over this action pursuant to 28 U. S. C. §§ 1331, 1343, and 1367.

20.     Venue in this District is proper pursuant to 28 U. S. C. § 1391 because the underlying events giving rise to Plaintiffs' claims occurred within the boundaries of the United States District Court for the Northern District of Illinois, and, on information and belief, all parties reside in the District.

## FACTS APPLICABLE TO ALL COUNTS

### *Second and Third Grades*

21.     District 209U students began calling CSZ racially derogatory names and making racially derogatory comments to him in the 2nd and 3rd grades.  Mrs. Zirbel reported an incident to Michael Merit, then-principal of Stevens.  Mr. Merit refused to investigate or accept any responsibility, and the racial verbal abuse of CSZ simply continued thereafter.

### *Fourth Grade*

22.     In the spring of 2015, CSZ was in the fourth grade at Stevens.

23.     In approximately March or April, 2015, a Caucasian student by the name of CP began to utter racial slurs to CSZ in school and on the way home from school.  In the gym before school, during classes, and in the school cafeteria at lunchtime, CP repeatedly called CSZ "the N-word," called him a derogatory word for a Mexican person, told him to "go back across the border" and "back across the river where he came from," and said his sister and his mom's boyfriend told him to say these things to CSZ.  In several related incidents over a period of several school days, CP called CSZ these and similar names.  The name-calling was overheard by many other students.

24.     During this time, on one occasion in the school gym, CP also punched CSZ multiple times.

25.     On the first occasion that CP's racial name-calling began, CSZ approached Mrs. Dennis, who was on lunch-duty in the cafeteria.  He told her about the racial name-calling that was then taking place.  Her response was, "just go sit down."  Later in during the same day, after the racial name calling did not stop, CSZ also went to Ms. Dennis' office and told her again about it again.  She gave CSZ a similar verbal response, and she did nothing.

26.     Thereafter, CP and other students continued to call CSZ the N-word in school.

27.     Over the course of the next several days, CSZ told Ms. Dennis six or seven different times that CP was calling him the N-word.  Always, Ms. Dennis did nothing.  Because she did not do anything to stop the racial harassment, CSZ gave up and stopped telling her.

28.     During the same period, Melissa Zirbel made several telephone calls to Ms. Dennis and specifically addressed with her the fact that CP and other students were calling her son the N-word.  In response to her calls, Ms. Dennis did nothing.  She refused to investigate this and other incidents of student racial harassment of CSZ.  She took the position that it was not the school's responsibility to protect CSZ.

29.     Despite CSZ's pleas for help, Ms. Dennis and Stevens did nothing to intervene and stop the racial harassment.  Ms. Dennis never talked to CP or contacted CP's parents about their son's racist behavior.

30.     On information and belief, District 209U took a single, brief, disciplinary action against CP, but it was disproportionately minor compared with the scores of times he had

racially bullied, harassed, and physically attacked CSZ, and, therefore, it was ineffective as a deterrent.

31.     In the alternative, if Stevens and/or Ms. Dennis did take any measures, they were insufficient to stop the pattern of racial harassment of CSZ and insufficient to prevent harm from being done to CSZ.

32.     Because Stevens and District 209U did nothing significant to discourage the racial harassment of CSZ, District students continued to frequently call CSZ racially derogatory names in subsequent grades.

### *Fifth Grade*

33.     During the 2015-16 school year, CSZ was in the fifth grade at Stevens.

34.     Beginning in the fifth grade and continuing through the seventh grade, a student by the name of CT has been calling CSZ the N-word.  This student has never stopped calling CSZ the N-word.  Other students, including BS and JL, have heard CT call CSZ the N-word.  CT has also admitted in writing that he has called CSZ the N-word.

35.     The first incident of racial name-calling by CT took place in fifth grade at lunchtime in the school cafeteria.  On that day, CT called CSZ the N-word continuously throughout the lunch period.

36.     When CT began calling CSZ the N-word, CSZ reported this to Ms. Dennis.  Ms. Dennis and Stevens did not discipline CT in any way.

37.     Consequently, after Ms. Dennis talked to CT, CT continued to call CSZ the N-word.

38.     Melissa Zirbel repeatedly contacted and talked with Ms. Dennis about the fact that CT was calling her son the N-word.  Ms. Dennis did not investigate and would not take

responsibility or action to stop the harassment. Ms. Dennis never contacted CT's parents about their son's racist behavior.

39.     Ms. Dennis never initiated or sought permission to initiate diversity sensitivity education and training for Stevens' students, teachers, administrators and staff.

40.     CSZ and other students have also heard CT call other biracial (African-American and Caucasian) students the N-word, including a fellow classmate of CSZ's, KHH. On information and belief, this fact has been brought to the attention of teachers and school administrators at Stevens and District 209U.

41.     However, on information and belief, Stevens and District 209U has never disciplined CT for his use of racial slurs.

42.     In the alternative, any measures taken by Stevens and/or the District to discourage racial harassment by CT and other students have been insignificant.

43.     As a result of her and other District officials' failures, CT and other students have continued to direct racial slurs at CSZ and other students through the present.

44.     Because of District 209U's inaction, students' racial harassment of CSZ simply grew worse in middle school.

### *Sixth Grade*

TC Incident

45.     In the fall of 2016, CSZ was in the 6th grade at WMS.

46.     During Mr. Hanlon's art class in approximately November or December, 2016, a Caucasian student by the name of TC told CSZ, referring to CSZ's skin color, that he was "ugly" and that "if it was not for Obama, you would not be here." The comment was

overheard by TC's friends and other students.  TC also repeatedly called CSZ racial names during Social Studies class.

47.     CSZ immediately told Mr. Goff, the Assistant Principal, about this incident.  Mr. Goff's response to CSZ ignored the fact of TC's racist comment, which he did not address with TC or her parents.  Instead, his response was to strongly scold CSZ for his verbal defense to TC's comment.

48.     Melissa Zirbel contacted and spoke with Mr. Goff.  She told him that TC's comment about CSZ's race was inappropriate, and she requested diversity training for WMS students.  She explained that the students do not know that it is wrong to call another student racist names.

49.     Mr. Goff's response to Ms. Zirbel was that the racist comments that CSZ reported TC made to him were "a he-said-she-said" and that he "cannot tell parents how to raise their children."

50.     WMS and District 209U did not censure or discipline TC for making racist comments to CSZ.  They did not do anything to discourage such comments.

51.     As a result, the racial harassment of CSZ in school continued throughout 6th grade.

<u>CP Incident</u>

52.     On or about March 1, 2017, during Ms. Enz's 6th grade math class, a Caucasian student by the name of CP initiated a conversation with CSZ in which she told him, "when you are older, you will be sitting in jail like the rest of your people."

53.     CSZ immediately reported the comment to Mr. Goff.

54.     Melissa Zirbel also contacted and talked with Mr. Goff about this incident shortly after it happened.  Mr. Goff's response to Ms. Zirbel was, "It's a 'he-said-she-said,' his word against her word, so we can't do anything."  "And we can't tell parents how to raise their kids."  Mr. Goff did not contact CP's parents to tell them about their daughter's racist remark to CSZ.

55.     Neither Mr. Goff, WMS, nor District 209-U disciplined CP in any way for her racist remark to CSZ.  District 209-U's response was to plan to punish CSZ alone for his verbal defense to CP's racist comment.

56.     As a result of District 209U's approach, the racist harassment of its student CSZ continued.

<u>JL Incidents</u>

57.     A Caucasian 6th grade student by the name of JL called CSZ the N-word almost every day throughout 6th grade.

58.     CSZ reported only a few instances of JL's name-calling to administration officials because it had become clear to him that school officials were not willing to take any significant action in response to his complaints, and he had lost faith in them.

59.     As one example of JL's racist behavior, in or about early April, 2017, CSZ was eating lunch at a table with several other kids in the school cafeteria.  At this time, JL repeatedly called CSZ the N-word, told him he was "gay," and threatened to choke CSZ with his penis.  Other students, including BS and HH, were present and heard he comments.  One student has admitted in writing that JL called CSZ the N-word.

60.     As some defense, CSZ began to take video and audio with his phone of JL calling him the N-word.

61.     The school janitor ("Cheryl") then overheard JL shouting about CSZ taking video of him.  CSZ had a broken leg in a cast at the time.  The janitor physically grabbed CSZ by the arm, lifted him out of his lunch chair, pulled him out of the cafeteria and dragged him to the principal's office.

62.     CSZ told the janitor that JL was making deeply offensive racist and violent comments to him, but the janitor ignored CSZ.  She told Mr. Spicer, the principal, that CSZ was recording video and being inappropriate.  In her account to the principal, she ignored the racial slurs, homophobic slurs, and the threats of violence that CSZ had reported to her.

63.     While at the office, CSZ also repeated to Mr. Spicer and Mr. Goff the names and comments JL directed at him.

64.     Melissa Zirbel also contacted and talked to Mr. Goff about the incident and the things JL had said to CSZ.  Mr. Goff's response was that JL has a behavior problem, and he can't easily get him relocated.

65.     Mr. Goff's solution to JL's racist comments was for CSZ to leave class and school early in order to avoid JL.

66.     This "solution" placed the burden and the cost (in the form of lost classroom time) of solving the problem of racial harassment on the victim, CSZ, when it was District 209U's responsibility to adopt measures to protect CSZ from racial harassment and create a safe environment in which he could learn.

67.     At her initiative, Melissa Zirbel met with Superintendent Matt Swick in person about this incident.  He was non-committal.

68.     Ms. Zirbel also reported the incident and discussed it with Dr. Kevin Feeney, Principal of Wilmington High School at the time.  Dr. Feeney's response was to focus

on the janitor's account and to ignore the fact that JL had directed racially derogatory comments and violent threats against CSZ.

69.     Neither Dr. Spicer, Mr. Goff, WMS, nor District 209-U disciplined JL in any fashion for the racist and violent comments he directed at CSZ.

70.     Nor did WMS or District 209U seek to educate or sensitize JL or other students to issues of racial diversity.

71.     In consequence, other WMS and District 209 students continued to make racist remarks to CSZ.

<u>MJ Incident</u>

72.     In approximately April or May, 2017, during Mr. Geiss' "shop class," a Caucasian 6th grade student by the name of MJ told CSZ, "in different times, you would be my slave, and I would be your master, whipping the shit out of you."

73.     Other students, including KHH, overheard the comment.  KHH was another biracial (African-American and Caucasian) student at District 209U.

74.     At the same time that MJ made his comment to CSZ, MJ told KHH, "You'd be in the back of the bus in different times."

75.     After MJ made these comments, CSZ and KHH went to the Principal's office together to report MJ's comments.  They reported them to both Mr. Goff and Dr. Spicer.

76.     CSZ also reported the incident to the school counselor, Jack Skole.

77.     Two or three days following the incident, Mr. Spicer and Mr. Goff placed MJ and CSZ in the same room in order for CSZ to have the opportunity to tell MJ why what MJ said was hurtful.

78.     Again, this approach to diversity or sensitivity training put the administrative burden and the emotional cost on the affected student, causing CSZ pain again in the process, and failed to address District 209U's underlying problem of racial bias among students.  It was not the standard or best practice for accomplishing diversity sensitivity training.

79.     To date, this has been the District's only strategy for sensitizing racially biased students.  It was painful for CSZ, who understandably has not wanted to repeat it.

80.     As a result of District 209U's slap-dash, ineffectual response to racial harassment of its student CSZ, MJ continued to call CSZ racist names in both the 6th and 7th grades.

### BS Incident

81.     Over the course of two days, a Caucasian 6th grade student by the name of BS called CSZ the N-word repeatedly in the school cafeteria during the lunch period.  Other students, including CT and JL, were also present and heard it.  This student has also admitted in writing that he called CSZ the N-word.

82.     CSZ immediately went to Mr. Goff's officer and reported the incidents to him.

83.     Melissa Zirbel also reported to Mr. Goff that BS had repeatedly called CSZ the N-word.  Mr. Goff's response was, "it's a he-said-she-said, so we can't do anything, and we can't tell parents how to raise their kids."  Mr. Goff did not contact BS' parents to inform them that their son was calling another District 209U racist names.

84.     On information and belief, neither Mr. Goff, nor Dr. Spicer, nor WMS, nor District 209U imposed any significant discipline on BS for calling CSZ the N-word repeatedly.

85.     Nor did they institute any diversity sensitivity training for District 209U students, teachers and administrators.

86.     The only institution and the only people who could protect CSZ from racially discriminatory harassment that disrupted his self-esteem and interfered with his ability to learn, did nothing reasonable or effective to stop it.  Consequently, the racial harassment of CSZ continued unabated until it was intolerable for him and his mother.

87.     Near the end of CSZ's 6th grade year, in or about May, 2017, after more than two years of complaints to but no action or changes by District 209U, Melissa Zirbel filed a formal complaint with the U. S. Department of Education's Office of Civil Rights ("OCR") regarding the District's failure to address the constant and widespread racial harassment of her son, CSZ.

88.     Nevertheless, District 209U's failure to protect its student CSZ from racial harassment continued even in the face of plaintiffs' pending OCR complaint.

### *7th Grade*

89.     In the fall of 2017, CSZ was in 7th grade at WMS.

### JL Incident

90.     On the afternoon of Friday, September 1, 2017, CSZ was at a Wilmington High School football game.  The High School football field is located directly behind WMS. CSZ was playing catch with a football with three, Caucasian, 7th grade WMS students, JL, JM and HH.  They played next to the High School football field, on school district property.

91.     While they played catch, JL began to call CSZ the N-word and continued calling him the N-word repeatedly.  JL also physically struck CSZ during this incident.

92.     In school on Monday, September 4, CSZ told Mr. Goff about the incident.

93. On September 5, 2017, Melissa Zirbel also complained to Dr. Spicer about the football game incident.

94. On information and belief, WMS disciplined JL as a result of the incident.

95. However, WMS did not conduct any diversity sensitivity training with JL or other WMS students.

<u>MC Incident</u>

96. On October 22, 2017, in Ms. Ziller's WMS classroom, a Caucasian 7th grade student by the name of MC told CSZ that he annoyed her and that she was going to hit him. This student had previously called CSZ the N-word and she had been calling CSZ "gay" since the 3rd grade. On those previous occasion, CSZ told Ms. Dennis about the incident; however, nothing was done to address or prevent MC's racist bias and comments.

97. Next, on October 22, 2017, MC hit CSZ with a book two or three times.

98. Defending himself, CSZ knocked the book out of MC's hands and to the floor.

99. Ms. Ziller then blamed CSZ for the entire incident, leaping to the conclusion that he had caused it. She ignored MC's initiating aggression and the racial bias against CSZ that motivated it.

100. On another occasion, after MC had called CSZ "gay," Ms. Ziller ignored MC's discriminatory comment and said, "I know he [CSZ] is a snitch."

101. Ms. Ziller never took seriously or acted on any of CSZ's complaints that MC and other students were directing racial slurs at him and were the instigators in his interpersonal conflicts with other students. Ms. Ziller simply blamed CSZ's for everyone's behavior in all of these interactions, ignoring the underlying racial harassment and aggression.

102.    Ms. Ziller also made the harassment of CSZ worse by seating him with several of the students who (as he told her) were singling him out for racial aggression, including AM, AB, CP, EC, GO, HD, JS, MC, MM, and NY.

103.    As a result of Ms. Ziller's actions, CSZ was unable to concentrate when he was placed with students who harassed him.

104.    Neither Ms. Ziller, nor Dr. Spicer, nor Mr. Goff, nor District 209U ever took any action to discipline MC for her behavior on October 2017 or for her racist comments toward CSZ over the years.

105.    Nor did they ever educate or sensitize her or other students to CSZ and other minority students through implementing diversity training.

<u>HD Incidents</u>

106.    At school in or about November, 2017, a Caucasian 7th grader by the name of HD told CSZ that his questions and comments in class do not matter and that anything he says "should not be brought on this earth."

107.    On this and previous dates, HD made racially derogatory statements to CSZ, saying things like "your kind are ugly, retarded and stupid."

<u>HH and MJ Incidents</u>

108.    On December 1, 2018, in the hallway, a Caucasian 7th grader by the name of HH delivered a message to CSZ from another 7th grader, MJ, who had been in Ms. Hansen's Social Studies class with CSZ earlier in the day.  The message was that "MJ is happy that his family owned your family back in the day."  Other students heard the comment, including MCM.

109.    Another 7th grader, MC, overheard the comment delivered by HH in the hallway.

110. On another day in Social Studies class at about this time, on an occasion when the lights were out in the classroom, MJ said, "Where's [CSZ]? You can't see him because he's dark," and you can only see his "flashing pair of teeth."

111. CSZ told Mr. Goff about these comments. Nothing was done by administrators to discipline, or educate or sensitize HH, MJ or any other District 209U students.

<u>NG Incident</u>

112. On December 11, 2017, at breakfast in the school cafeteria, a Caucasian 6th grader by the name of NG called CSZ the N-word multiple times. Several other students were present and heard it, including DD, CS and AM.

113. On other occasions, these same students bullied and isolated CSZ in classes, including in gym class, where they refused to pick him when teams were being picked for Dodgeball.

<u>Other Incidents</u>

114. The incidents included and described above are illustrative, not exhaustive, of the pattern of ongoing, racial, verbal and physical abuse and inaction that CSZ has suffered since the 3rd grade as a student in District 209U.

***District 209U Has Failed to Address the Underlying Issue of Racial Bias with Diversity Sensitivity Training for Students and Employees and, Therefore, Has Failed to Stop and Prevent Racial Harassment of its Minority Students, Including CSZ***

115. Despite complaints by other minority students of discrimination by many different Caucasian students in a predominantly white school, the District has completely failed to undertake any diversity sensitivity education and training for students.

116. Despite District 209U's inaction in addressing such complaints and the persistence of incidents underlying the complaints, its administrators have failed to implement

any diversity sensitivity education and training for teachers, staff, and administrators, i.e., those who encounter and respond to incidents of racial harassment and complaints.

117.    By means of many complaints over a period of several years, District 209U has been made aware of the need for diversity sensitivity education and training for students, teachers, staff and administrators.  Yet it has failed to take actions to implement such education and training.

118.    Melissa Zirbel, the mother of a mixed-race student of District 209U, repeatedly and directly requested that school officials undertake diversity sensitivity education.

119.    Over the last four years, Ms. Zirbel made this request orally at meetings with administrators.  She did so at a meeting in March or April, 2017, after pointing out that school officials were doing nothing to address the racial harassment of her son.  She specifically told them that they were not focusing on the underlying issue of the lack of sensitivity to racial minority students.  She mentioned, as an example, that the entire community thought it was ok to use the N-word.

120.    The issue of the need for diversity sensitivity education and training was also discussed at District 209U meetings of school principals.  However, throughout the time that CSZ and other minority students were struggling with racial harassment from their peers, the District failed to implement any such education and training.

121.    The District completely failed to do so until very recently when it was forced to take such steps by OCR, in the wake of Ms. Zirbel's complaint.  *Per* OCR, the very first such trainings, for staff and for students, were to have been completed by May 15, 2018. The District still has not yet conducted any diversity education for students.

122.     This is too little, too late.  CSZ was harmed because the District failed to undertake diversity sensitivity training on a timely basis.

### *CSZ Has Been Psychologically Traumatized and Deprived of an Equal Education*

123.     As the direct result of defendants' actions and inactions in failing to protect him from racial harassment in an all-white school district, CSZ has suffered serious emotional, psychological, and educational harm in the 4th, 5th, 6th and 7th grades.

124.     These were crucial years for CSZ's emotional, social and academic development.

125.     CSZ's teachers and others believe he is an unusually bright child, but under the pressure of the racial bullying during this period CSZ's grades declined.  His standardized test scores declined.  The constant bullying made it difficult for him to concentrate and maintain his in-school work, homework, grades, and test scores.  During this period, CSZ did not want to go to school.  Few kids stood up for him.  He had few friends.

126.     As a result of District 209U's inaction over years in failing protect him from racially motivated harassment, CSZ feels outcast and isolated in school.

127.     As a result of these incidents and the school's refusal to protect CSZ during grades 4 - 7, CSZ had great difficulty concentrating in school and on his work.  He began to hate school and did not want to attend.  His grades dropped.

128.     Both in school and out of school, CSZ has required ongoing psychological care and counseling in order to deal with the psychological harm caused by the students' racial harassment and the school's failure to act and protect him.

### <u>COUNT I – VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964</u>

129.    Plaintiffs incorporate paragraphs 1 – 128 above by reference.  This count is against defendant Wilmington School District 209U and defendants Swick, Spicer, Goff, Ziller and Dennis in their official capacities.

130.    Defendants were callously, recklessly and deliberately indifferent to known physical and verbal racial abuse that was severe, pervasive, and objectively offensive. While defendants were aware of the abuse and had authority to end it, they failed to do so.

131.    Defendants' actions were clearly unreasonable under the circumstances.

132.    Defendants' wrongdoing was in reckless disregard of District 209U's obligations to protect CSZ's federally protected rights.

133.    As a result of defendants' wrongdoing, CSZ was deprived of access to educational opportunities and benefits provided by District 209U.

134.    As a result of defendants' callous, reckless and deliberate indifference, CSZ sustained damages, including but not limited to pain and suffering, emotional distress, and medical expenses.

## COUNT II – RETALIATION UNDER TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

135.    Plaintiffs incorporate paragraphs 1-128 and 129-134 above by reference. This count is against defendant Wilmington School District 209U and defendants Swick, Spicer, Goff, Ziller and Dennis in their official capacities.

136.    Plaintiffs engaged in statutorily protected activity when they complained to defendants and government officials about the racial harassment, threats of violence, actual violence, and fear of further threats to CSZ's psychological and physical safety and well-being that he experienced as a District 209U student.

137. As result of plaintiffs' statutorily protected activities, defendants took adverse actions against their student CSZ, including disciplining and threatening to discipline him instead of the perpetrators of racial harassment, grouping him with the perpetrators which made it even harder to concentrate and learn, and making him (rather than the school and the perpetrators) bear the burden and cost of attempted but unreasonable and ineffective remedies to the racial harassment he experienced, which further deprived him of access to educational opportunities and benefits provided by District 209U.

138. By means of the actions set forth above and other actions, defendants retaliated against CSZ because plaintiffs complained about the racial harassment and abuse CSZ was experiencing.

139. Had plaintiffs not engaged in protected activity, defendants would not have taken these adverse actions.

140. By retaliating against CSZ, defendants made CSZ feel unwelcome as a student within District 8. They made him feel isolate, outcast and criminal.

141. As a result of defendants' retaliation, CSZ sustained significant damages, including pain and suffering, emotional distress and medical expenses.

## COUNT III – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION

142. Plaintiffs incorporate paragraphs 1 – 128 by reference. This count is against defendants Swick, Spicer, Goff, Ziller and Dennis in their official and individual capacities.

143. The Equal Protection Clause of the Fourteenth Amendment grants to all U. S. citizens the right to be free from invidious discrimination in statutory classifications and other

governmental activity, including the programs and activities offered by Wilmington School District 209U.

144.    Violations of the Equal Protection Clause can be remedied under 42 U. S. C. § 1983.

145.    Defendants Swick, Spicer, Goff and Dennis were deliberately indifferent regarding the racial harassment, threats of violence and actual violence that CSZ experienced.

146.    Defendants Swick, Spicer, Goff and Dennis were callously, recklessly, and deliberately indifferent to CSZ's safety and well-being.

147.    Defendants Swick, Spicer, Goff and Dennis' conduct deprived CSZ of rights, privileges and immunities secured by the United States Constitution, including the right under the Equal Protection Clause to not be discriminated against based on race.

148.    Defendants Swick, Spicer, Goff and Dennis' actions in permitting the racial harassment and abuse suffered by CSZ deprived CSZ of equal educational opportunities.

149.    Defendants Swick, Spicer, Goff and Dennis' actions were not rationally related to a legitimate governmental purpose.

150.    Defendants Swick, Spicer, Goff and Dennis acted under color of state law when they committed the wrongful acts set forth above.

151.    As a result of Defendants Swick, Spicer, Goff and Dennis' callous, reckless, and deliberate indifference, CSZ sustained significant damages, including pain and suffering, emotional distress, and medical expenses.

152.    Defendants Swick, Spicer, Goff and Dennis' conduct was motivated by evil motive or intent or involved reckless or callous indifference to CSZ's federally protected

rights. CSZ is, therefore, entitled to an award of punitive damages against Defendants Swick, Spicer, Goff and Dennis.

### COUNT IV – VIOLATION OF THE ILLINOIS CIVIL RIGHTS ACT OF 2003

153. Plaintiffs incorporate paragraphs 1 – 128 by reference. This count is against defendant Wilmington School District 209U and defendants Swick, Spicer, Goff, Ziller, and Dennis in their official capacities.

154. Defendants were callously, recklessly, and deliberately indifferent to known physical and verbal racial abuse that was severe, pervasive, and objectively offensive. While defendants were aware of the abuse and had authority to end it, they failed to do so.

155. Defendants' actions were clearly unreasonable under the circumstances.

156. Defendants' wrongdoing was intentional and in reckless disregard District 209U's obligations to protect CSZ's rights.

157. As a result of defendants' wrongdoing, CSZ was deprived of access to educational opportunities and benefits provided by District 209U in violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 (the "Illinois Civil Rights Act").

158. As a result of defendants' callous, reckless, and deliberate indifference, CSZ sustained damages, including but not limited to pain and suffering, emotional distress, and medical expenses.

### COUNT V – RETALIATION UNDER THE ILLINOIS CIVIL RIGHTS ACT OF 2003

159. Plaintiffs incorporate paragraphs 1 – 128 and 153 – 158 above by reference. This count is against defendant Wilmington School District 209U and defendants Swick, Spicer, Goff, Ziller, and Dennis in their official capacities.

23

160.    Plaintiffs engaged in statutorily protected activity when they complained to defendants and government officials about the racial harassment, threats of violence, actual violence, and fear of further threats to CSZ's safety and well-being that he experienced as a District 209U student.

161.    As result of CSZ's and Melissa's statutorily protected activities, defendants took adverse actions against CSZ, including disciplining and threatening to discipline him (rather than the perpetrators of racial discrimination), grouping him with the perpetrators which made it even harder for him to concentrate and learn in school, and forcing him (rather than the perpetrators of discrimination and/or the school) to bear the burden and cost of attempted but unreasonable and ineffective remedies to the harassment, which further deprived him of access to educational opportunities and benefits provided by District 209U.

162.    By means of the actions set forth above and other actions, defendants retaliated against CSZ because plaintiffs complained about the racial harassment and abuse CSZ was experiencing.

163.    Had CSZ and Melissa not engaged in protected activity, defendants would not have taken these adverse actions.

164.    By retaliating against CSZ, defendants made CSZ feel unwelcome as a student within District 8.  They made him feel isolated, ostracized, and criminal.

165.    As a result of defendants' retaliation, CSZ sustained significant damages, including pain and suffering, emotional distress and medical expenses.

## COUNT VI – NEGLIGENT SUPERVISION

166.    CSZ incorporates paragraphs 1 – 128 above by reference.  This count is against defendants District 209U, Swick, Spicer, Goff and Dennis in their official and individual capacities.

167.    Prior to racial, verbal and physical attacks against CSZ, CSZ and his mother, Melissa, repeatedly complained to District 209U and the individual defendants named herein about the racial harassment and threats of physical violence perpetrated against her son CSZ.

168.    For five years, defendants have had knowledge of the racial harassment, threats of physical violence, and actual violence perpetrated against CSZ.

169.    In light of this knowledge, they owed CSZ a special duty to take reasonable measures to protect CSZ from harm from students who it knew had harmed or threatened to harm him in the past.

170.    Defendants had direct and immediate control over those students and could have provided additional supervision, contacted the students' parents, contacted law enforcement, and/or taken other reasonable measures to protect their student CSZ.

171.    Defendants' failure to take any of these measures was a direct and proximate cause of CSZ's injuries.

172.    Defendants' failure to take reasonable measures to prevent the racial, verbal and physical abuse CSZ has suffered, constituted willful and wanton negligence and a conscious disregard for the welfare of CSZ.

173.    As a result of defendants' willful and wanton negligence, CSZ sustained damages, including but not limited to pain and suffering, severe emotional distress and trauma, and medical expenses.

174.     As a result of defendants' willful and wanton conduct, CSZ is entitled to an award of punitive damages against defendants.

## <u>PRAYER FOR RELIEF – ALL COUNTS</u>

WHEREFORE, plaintiff respectfully request that the Court enter judgment in his favor and against defendants for:

a.     Compensatory damages;

b.     Punitive damages;

c.     Appropriate injunctive relief;

d.     Reasonable attorney's fees, expert fees, and other litigation expenses;

e.     Costs; and

f.     Such other or further relief as the Court deems appropriate.


Respectfully submitted,


<u>/s/Al Hofeld, Jr.</u>
Al Hofeld, Jr.


Al Hofeld, Jr., Esq.
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com
www.alhofeldlaw.com

## JURY DEMAND

Plaintiff hereby demands trial by jury for all issues so triable.

/s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr., Esq.
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com
www.alhofeldlaw.com

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

/s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr., Esq.
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com
www.alhofeldlaw.com

## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld, Jr., plaintiff's attorney, hereby certify that on August 21, 2018, filing and service of the foregoing **COMPLAINT** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr., Esq.
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com
www.alhofeldlaw.com